DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | | |
|---|---|---|
| JUAN MENDEZ, et al. | : | CIVIL ACTION |
| v. | : | |
| PUERTO RICAN INTERNATIONAL COMPANIES, INC., et al. | : | NO. 05-cv-00174-LDD |

| | | |
|---|---|---|
| SHAWN SMITH, et al. | : | CIVIL ACTION |
| v. | : | |
| PUERTO RICAN INTERNATIONAL COMPANIES, INC., et al. | : | NO. 05-cv-00199-LDD |

MEMORANDUM OPINION

Legrome D. Davis, J.　　　　　　　　　　　　　　　　　　　　　　　　　　　July 1, 2010

　　Forty-eight individual Plaintiffs brought these consolidated employment discrimination and retaliation cases against Defendants Plant Performances Services, LLC ("P2S"), Fluor Corporation ("Fluor"), and others, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Presently before the Court is P2S's and Fluor's second motion under the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), to stay proceedings pending arbitration[1] in which Defendant HOVENSA, L.L.C. ("Hovensa") joined.[2] Subsequently P2S and Fluor filed a Sur-Reply Memorandum in which Hovensa also joined.[3] Defendants contend that they are non-signatory beneficiaries who are entitled to enforce arbitration clauses in written dispute resolution agreements ("DRAs") that certain Plaintiffs signed when they applied for

---

[1] Filed at Doc. No. 129, No. 05-174; Doc. No. 52, No. 05-199.

[2] Filed at Doc. No. 135, No. 05-174; Doc. Nos. 56 and 93, No. 05-199.

[3] Filed at Doc. Nos. 195 and 199, No. 05-174; Doc. No. 95, No. 05-199.

1

work with Wyatt VI, Inc. ("Wyatt") or Triangle Construction & Maintenance, Inc. ("Triangle") at the oil refinery owned and operated by Hovensa in St. Croix. Wyatt and Triangle, who are not parties to this litigation, are Hovensa contractors that performed work at the refinery. For the following reasons, we conclude that Plaintiffs did not agree to arbitrate their claims and, therefore, Defendants' motion to stay litigation and compel arbitration will be denied.

I. FACTUAL AND PROCEDURAL BACKGROUND

On March 6, 2006, Defendants filed their first motion to stay litigation and compel arbitration, contending on information and belief that all forty-eight Plaintiffs had entered into written agreements binding themselves to arbitrate disputes of this kind. Defendants supported their motion with DRAs signed by only eight Plaintiffs. Thirty-seven Plaintiffs responded with affidavits, averring that they had not entered into such agreements. The District Court granted the motion with respect to the eight Plaintiffs who had signed DRAs,[4] ruling that the arbitration clauses in the DRAs were sufficiently broad to cover this litigation. Because there was no evidence that any other Plaintiffs agreed to arbitrate their disputes, the District Court denied the motion as to the remaining forty Plaintiffs.

Defendants P2S and Fluor appealed. *Mendez v. Puerto Rican Int'l Cos., Inc.*, 553 F.3d 709 (3d Cir. 2009). The Third Circuit affirmed the District Court's finding that there was no

---

[4] By its August 13, 2007 Order (Doc. No. 110, No. 05-174; Doc. No. 46, No. 05-199), the District Court ruled that the following eight Plaintiffs had executed arbitration agreements and were bound by their agreements: Pius Aurelien, Ira Claxton, Thomas Duparl, Nathaniel Hobson, Gregory Laforce, Joseph Oscar, Mark Vitalis, and Bertril William. There is no dispute that these Plaintiffs were properly placed in arbitration. All of their claims, except Gregory Laforce's, have been arbitrated and by stipulation of the parties, have been dismissed with prejudice as to Hovensa. (*See* Feb. 9, 2010 Order, Doc. No. 184, No. 05-174; Doc. No. 82, No. 05-199). Gregory Laforce is believed to be deceased.

evidence showing the remaining forty Plaintiffs had entered into arbitration agreements. *Id.* at 711. The Third Circuit also affirmed the District Court's denial of the motion to stay litigation and compel arbitration of the remaining Plaintiffs' claims, holding that the FAA was not intended to curtail the litigation rights of anyone who has not agreed to arbitrate the issues before the court. *Id.*

Defendants now attempt to partially cure the evidentiary deficiency that was fatal to their first motion to stay litigation and compel arbitration, supporting their instant motion with DRAs signed by eleven Plaintiffs.[5] In their opposing affidavits, each Plaintiff avers that he or she never executed a DRA with any Defendant; rather each avers that he or she applied for work at the refinery and executed a DRA with either Wyatt or Triangle on various dates in 2003 or in 2005 to 2008. Each contends that he or she was subjected to the alleged incidents of discrimination and retaliation at the refinery at various times from April to December 2004.[6] In regard to their application for work or their employment at the refinery in 2004, there is no evidence any Plaintiff signed any arbitration agreement at that time. Each avers that he or she signed the pertinent Wyatt or Triangle DRA in connection with an application for work or a finite period of

---

[5] Defendants initially supported their instant motion with DRAs allegedly executed by fifteen Plaintiffs. In their responding affidavits, four Plaintiffs averred that they had not entered into any agreement to arbitrate, contending that the name, social security number, or signature recorded on the DRA that Defendants attributed to each Plaintiff was not their own. Defendants withdrew their motion as to those four Plaintiffs: Jose Gonzales, Juan Mendez, Joseph Nicolas, and Humberto Ortiz. (*See* Defs.' Reply Br. at 2 n.1, Doc. No. 151, No. 05-174.) Defendants now seek to stay litigation and compel arbitration of the claims of the following Plaintiffs: Michael Bynoe, Orson Flemming, Carlos Garcia, Alfred James, Heriberto Laboy, Miguel Liriano, Sostenes Montilla, Marco Rijo, Catherine Sabin, Keith Simon, Jr., and Cyril Thomas.

[6] Plaintiffs allege differing time periods in 2004. (*See* Pls.' Br. at 3, Doc. No. 139, No. 05-174; First Am. Compl. at ¶ 1, Doc. No. 3, No. 05-174; Compl. at ¶1, Doc. No. 1, No. 05-199; Affs., Pls.' Opp'n Br., Exs. 1, 3-12, Doc. No. 139, No. 05-174.)

employment at the refinery that either ended before the alleged incidents of discrimination and retaliation occurred in 2004 or took place after the said incidents occurred in 2004.

Specifically, Plaintiff Carlos Garcia avers that on August 12, 2003, he signed the Wyatt DRA on which Defendants rely, but avers that he did so in connection with his employment with Wyatt in 2003. He avers that after his work for Wyatt ended, he was hired at the refinery by P2S or Puerto Rican International Companies, Inc. ("PIC") on or about June 2004. He alleges in his complaint that P2S and PIC discriminated and retaliated against him when he worked at the refinery in 2004. There is no evidence that he signed a DRA with P2S, Fluor, Hovensa, or any other affiliate of Hovensa when he resumed working at the refinery in June 2004, or at any time thereafter. Defendants seek to prospectively apply the DRA that Garcia signed with Wyatt on August 12, 2003, to compel Garcia to arbitrate his claims in this litigation.

Each of the other Plaintiffs avers that on various dates in 2005 to 2008, he or she signed the pertinent Wyatt or Triangle DRA on which Defendants rely, but avers that he or she entered into the DRA for purposes of an application for work or a period of employment at the refinery after the incidents at issue in this litigation occurred in 2004.[7] Each avers that after being subjected to discrimination and retaliation while employed at the refinery in 2004, he or she was terminated from employment at some point in October to December 2004. There is no evidence that any of these Plaintiffs signed a DRA with P2S, Fluor, Hovensa, or any other affiliate of Hovensa when they applied for work or worked at the refinery in 2004. Defendants seek to

---

[7] Most of the Plaintiffs who signed a Wyatt or Triangle DRA in 2005 to 2008, in order to apply for work at the refinery, were never hired by Wyatt or Triangle. Plaintiff Orson Flemming was eventually hired, but not until nearly a year after he had applied for work and signed the Triangle DRA. Flemming was later laid-off about a year later.

retroactively apply the DRAs signed by these Plaintiffs with Wyatt or Triangle in 2005 to 2008 to compel Plaintiffs to arbitrate their claims in this litigation.

There is no dispute that the DRAs contain an arbitration clause that encompasses the type of claims alleged by Plaintiffs in this litigation. The parties also agree that the DRAs do not state any effective period or the duration of the promises to arbitrate. The DRAs are silent on whether the agreement to arbitrate remains in full force and effect notwithstanding Wyatt's or Triangle's decision not to hire an applicant for work, or their decision to lay-off or terminate an individual that was hired. Both the Wyatt and Triangle DRAs contain a virtually identical clause that extends the applicant worker's promise to arbitrate to certain beneficiaries who are not signatories to the DRAs:

> This agreement extends to [such] disputes with or claims against Wyatt, HOVENSA, L.L.C., other contractors or subcontractors employed at the HOVENSA refinery[,] and any of their related or affiliated companies, entities, employees or individuals (as intended third party beneficiaries to this agreement).

(*See* Triangle DRAs, Defs.' Br., Ex. 3 (the bracketed terms quoted above are found in the Wyatt DRAs, Defs.' Br., Ex. 2).)[8]

---

[8] In pertinent part, each Wyatt DRA included an arbitration clause that provides as follows:

> I recognize that differences may arise between Wyatt and me in relation to my application for employment and possible subsequent employment. . . . Regardless of whether Wyatt offers me employment, both Wyatt and I agree to resolve any and all claims, disputes or controversies arising out of or relating to: (1) my application or candidacy for employment; (2) an alleged wrongful decision not to hire me; (3) any statutory claims for discrimination or harassment on the basis of age, sex, race, color, religion, disability, or national origin under by [sic] state, federal, or territorial law that are pursued outside of the grievance and arbitration provision of the [Collective Bargaining Agreement] . . . exclusively by final and binding arbitration . . . .

(*See* Wyatt VI, Inc. Dispute Resolution Agreement, Defs.' Br., Ex. 2, Doc. No. 130-1, 05-199.) In pertinent part, each Triangle DRA included an arbitration clause that provides as follows:

II. DISCUSSION

Defendants seek to enforce arbitration clauses in the DRAs that Plaintiffs signed when they applied for work with Wyatt or Triangle. Defendants contend that the DRAs require each Plaintiff to arbitrate this civil rights dispute. Although P2S and Fluor did not sign and are not named in the DRAs, they contend that they are intended third-party beneficiaries of each Plaintiff's promise to arbitrate with Wyatt or Triangle. Hovensa joins in Fluor's and P2S's motion, contending that it is a named beneficiary of each Plaintiff's promise to arbitrate with Wyatt or Triangle. Plaintiffs oppose the motion, contending that they never agreed to arbitrate the alleged civil rights violations by Defendants in 2004 because the DRAs that they signed do not cover the relevant time period and Plaintiffs never intended to benefit any Defendant.

This dispute about arbitration is connected with transactions involving interstate commerce and, therefore, it is governed by the FAA. 9 U.S.C. § 2. The purpose of the FAA is to enforce a written provision in a contract to settle by arbitration a controversy "arising out of such contract or transaction." *Id.* A court may issue an order compelling arbitration if there has

---

> I recognize that differences may arise between Triangle and me in relation to my application for employment or any possible subsequent employment. Both Triangle and I agree to resolve any and all claims, disputes, or controversies, arising out of or relating to my application or candidacy for employment, the terms and conditions of any offer of employment, the relationship between me and Triangle, any termination of my employment with Triangle, my presence at [t]he HOVENSA refinery, or any related matter, exclusively by final and binding arbitration . . . . The Claims covered by this agreement to arbitrate include, but are not limited to . . . claims for wrongful discharge; claims for discrimination, including but not limited to discrimination based upon race, sex, religion, national origin, age, marital status, handicap, disability or medical condition; and claims for violation of any federal, territorial, or other governmental constitution, statute or regulation.

(*See* Triangle Construction & Maintenance, Inc. Dispute Resolution Agreement, Defs.' Br., Ex. 3, Doc. No. 130-1, 05-199.)

been a "failure, neglect, or refusal" to comply with an arbitration agreement. 9 U.S.C. § 4. A court must submit a matter to arbitration when (1) there is a valid agreement to arbitrate and (2) the particular dispute falls within the scope of the agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Upon application of one of the litigants, a court must stay litigation once it decides an issue is referable to arbitration under a written arbitration agreement. 9 U.S.C. § 3; *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 268-69 (3d Cir. 2004) (ruling that a district court has no discretion to deny a motion for stay once it decides to order arbitration).

When a party challenges the validity of an arbitration agreement, the court decides the threshold question of arbitrability. *Nino v. Jewelry Exch., Inc.*, No. 09-1268, --- F.3d ---, 2010 WL 2380787, at *5 (3d Cir. June 15, 2010). In deciding whether an issue is referable to arbitration, courts are bound by the principle that arbitration is a creature of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *See AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986) (stating the "first principle" of arbitrability is that arbitration is a matter of contract); *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 194 (3d Cir. 2001) (holding that it is inappropriate to force a party to arbitrate their dispute unless the party agreed to such arbitration); *Kaplan v. First Options of Chicago, Inc.*, 19 F.3d 1503, 1512 (3d Cir. 1994) ("Arbitration is fundamentally a creature of contract."), *aff'd*, 514 U.S. 938 (1995).

This dispute presents a question of arbitrability. The parties disagree about whether they agreed to arbitrate Plaintiffs' claims in this litigation, disputing whether each Plaintiff committed himself or herself to a continuing duty in perpetuity to arbitrate with Defendants any and all

7

claims, past, present, or future, by entering into a DRA with Wyatt or Triangle, notwithstanding Wyatt's or Triangle's decision not to hire an applicant for work, or their decision to lay-off or terminate an individual that was hired. Defendants contend that such an agreement exists and is valid, and Plaintiffs contend that they never intended to agree to such a one-sided bargain.

Under normal principles of contract interpretation, there is no good reason to conclude that by signing the DRAs, Plaintiffs intended to commit themselves to such an unbounded, far-reaching duty. It would be particularly unreasonable to conclude that in the signing the DRAs, Plaintiffs intended to waive or otherwise relinquish claims that arose some years before they even signed the DRAs. Without clear and unmistakable evidence that Plaintiffs did intend to bestow such a benefit on Defendants, this Court will not assume that the parties so intended.

Neither the plain language of the DRAs nor the circumstances surrounding their execution support such a duty. It is undisputed that the terms of the DRAs do not explicitly address the duration and temporal effect of each Plaintiff's promise to arbitrate. There is also no dispute that the DRAs are contracts of adhesion because Plaintiffs were required to sign them on a take-it-or-leave-it basis as a non-negotiable condition in order to secure work at the refinery. *See, e.g.*, *Edwards v. Hovensa, LLC*, 497 F.3d 355, 362 (3d Cir. 2007) (noting that a substantially similar Wyatt DRA was a procedurally unconscionable adhesion contract). Plaintiffs had no choice but to sign the DRAs without modification or forego employment. The DRAs thus do not evidence Plaintiffs' intent where Plaintiffs had no opportunity to bargain about their terms.

Moreover, given the employment setting that led to each executed DRA, Plaintiffs reasonably expected their promises to arbitrate to be effective and endure only in regard to the

8

particular employment relationship that generated the DRA. *See* RESTATEMENT (SECOND) OF CONTRACTS § 202(*l*), (5) (instructing that "[w]ords and other conduct are interpreted in light of all the circumstances" and the parties' intent may be evidenced by "any relevant course of performance, course of dealing, or usage of trade"); *Lodge, Inc. v. Caravelle Rest., Inc.*, 20 V.I. 268, 278-79 (V.I. Terr. Ct. 1984) (applying § 202 and noting that there is no surer way to find out what the parties meant than to see what they have done); *Sunshine Shopping Ctr., Inc. v. Kmart Corp.*, 85 F. Supp. 2d 537, 540 (D.V.I. 2000) (ruling a court may consider the context in which an agreement arose to determine its meaning). After an applicant was not hired, or after an applicant was hired but then laid-off or terminated, common sense would view the employment relationship as having come to an end. There is no good reason to presume the parties intended to maintain an ongoing relationship despite the cessation of all employment rights and obligations. Instead, each Plaintiff fairly expected that a DRA, which he or she signed when applying for work, ceased to be effective at the same time that his or her employment relationship came to an end.

Defendants' interpretation of the DRAs makes the parties' intent fiction and undermines the fundamental purpose of an arbitration clause and the FAA "to enforce a contract rather than transcend it." *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 205 (1991). *Litton* holds that an arbitration clause does not generally continue in effect after a contract expires. *Id.* at 208 (holding that after termination of a collective bargaining agreement, only post-termination grievances "arising under the contract" are subject to an arbitration clause within the expired agreement). Once the underlying contract expires, an arbitration clause

9

survives to cover only those disputes arising under the contract,[9] unless the parties include explicit language within the clause extending the duration of the promised benefit of arbitration.

The *Litton* standard fairly applies by close analogy to Plaintiffs' employment transactions. Plaintiffs' civil rights claims allege facts implicating only the parties' rights and obligations in employment relationships that began and ended in 2004. Plaintiffs' claims do not arise out of the employment transactions in which they signed the DRAs: their application or candidacy for employment and their employment with Wyatt or Triangle. Absent explicit language extending the scope and duration of Plaintiffs' promises to arbitrate, Plaintiffs have no duty to arbitrate their claims against Defendants.

Because we conclude that there is no evidence of a valid agreement to arbitrate as advanced by Defendants and that Plaintiffs' civil rights claims do not arise from the employment relationships that generated their promises to arbitrate, we do not reach the question of whether Defendants were intended beneficiaries of Plaintiffs' promises to arbitrate.

---

[9] In order for a dispute to arise under the arbitration clause of an expired contract, *Litton* requires a nexus between the post-termination conduct and the content of the agreement in which the arbitration clause is embedded:

> A post-termination dispute arises under the contract (1) when it involves facts or occurrences that arose before expiration; (2) where an action taken after expiration infringes a right that occurred or vested under the agreement; (3) where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement.

*Id.* at 205-06. Absent explicit language extending the scope and duration of the promised benefit of arbitration, Plaintiffs' duty to arbitrate would continue only under the exceptions outlined in *Litton*, none of which applies here.

III.   CONCLUSION

Accordingly, this Court will deny Defendants' motion to stay litigation and compel arbitration of the claims of Plaintiffs Michael Bynoe, Orson Flemming, Carlos Garcia, Alfred James, Heriberto Laboy, Miguel Liriano, Sostenes Montilla, Marco Rijo, Catherine Sabin, Keith Simon, Jr., and Cyril Thomas.

BY THE COURT:

/S/ LEGROME D. DAVIE

Legrome D. Davis, J.