NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF THE VIRGIN ISLANDS
# DIVISION OF ST. CROIX

| | |
|---|---|
| Juan MENDEZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> PUERTO RICAN INTERNATIONAL COMPANIES, INC., et al., <br><br> Defendants. | CIVIL ACTION <br><br> No. 05-174 <br><br> (Consolidated with No. 05-199) <br><br> OPINION |

THOMPSON, U.S.D.J.[1]

## I. INTRODUCTION

This matter has come before the Court upon two motions to disqualify Plaintiffs' counsel filed by Defendants Fluor Corporation, Fluor Enterprises, Inc., Plant Performance Services, LLC, and Plant Performance Services International, Ltd. (collectively, "Defendants"). (Case No. 05-174: Docket Entry Nos. 709, 710, 711, 753, 754 and Case No. 05-199: Docket Entry Nos. 563, 564, 565, 603, 604). Plaintiffs oppose both motions. (Case No. 05-174: Docket Entry Nos. 723, 755, 760 and Case No. 05-199: Docket Entry Nos. 577, 605, 610). The Court has decided these matters upon consideration of the parties' written submissions and without oral argument, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons given below, Defendants' motions to disqualify Plaintiffs' counsel are denied.

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

## II. BACKGROUND

These motions concern whether Plaintiffs' counsel, Lee J. Rohn & Associates, LLC ("Rohn & Associates"), must be disqualified from representing Plaintiffs in this employment discrimination case. For the purposes of this motion, the Court assumes the parties' familiarity with the underlying facts in the case and summarizes briefly only those facts relevant to the Court's decision.

In late 2005, two employment discrimination lawsuits were initiated against Defendants. The first, *Mendez, et al. v. Puerto Rican Int'l Cos. Inc., et al.*, was filed in November 2005. (Case No. 05-174: Docket Entry No. 1). The second, *Smith, et al. v. Puerto Rican Int'l Cos., et al.*, was filed in December 2005. (Case No. 05-199: Docket Entry No. 1). The two cases were consolidated on March 24, 2006. (Case No. 05-199: Docket Entry No. 18).

In March 2006, Defendants moved to stay proceedings pending arbitration. (Case No. 05-174: Docket Entry No. 26).[2] Defendants' motion was granted on August 13, 2007, as to all but fifteen of the plaintiffs. (Case No. 05-174: Docket Entry No. 110). Defendants appealed the Court's decision as to those fifteen plaintiffs on October 12, 2007, (Case No. 05-174: Docket Entry Nos. 111, 112, 113), and the Third Circuit affirmed on February 23, 2009, (Case No. 05-174: Docket Entry No. 127). A number of the plaintiffs' claims against another Defendant, Hovensa, LLC, were resolved through arbitration. (Case No. 05-174: Docket Entry No. 184).

Following the Third Circuit's decision, Defendants moved to compel arbitration and to stay proceedings pending arbitration as to the other fifteen plaintiffs. (Case No. 05-174: Docket Entry No. 129). The District Court denied Defendants' motion on July 1, 2010, (Case No. 05-174: Docket Entry Nos. 212, 214), and Defendants appealed, (Case No. 05-174: Docket Entry

---

[2] As the *Mendez* and *Smith* actions were consolidated, the Court henceforth cites only to the *Mendez* docket in this Opinion.

2

No. 240). The Third Circuit affirmed on August 12, 2011. (Case No. 05-174: Docket Entry No. 609).

On August 4, 2010, Defendants moved to dismiss the claims of eight of the plaintiffs for failure to prosecute. (Case No. 05-174: Docket Entry No. 314). Plaintiffs' counsel responded by opposing the motion to dismiss with respect to three of the plaintiffs, (Case No. 05-174: Docket Entry No. 383), and moving to withdraw as counsel with respect to the other five plaintiffs because representation had "been rendered unreasonably difficult or impossible," (Case No. 05-174: Docket Entry No. 392). The Court denied both motions on September 29, 2010. (Case No. 05-174: Docket Entry No. 466).

An amended complaint was filed on January 24, 2011. (Case No. 05-174: Docket Entry No. 558). Defendants then moved on September 27, 2011, to dismiss the claims of four of the plaintiffs for failure to prosecute. (Case No. 05-174: Docket Entry No. 612). Those plaintiffs opposed the motion, (Case No. 05-174: Docket Entry No. 656), and two of those plaintiffs subsequently filed a motion for leave to supplement their opposition on March 22, 2012, (Case No. 05-174: Docket Entry No. 688). The motion to dismiss and the motion for leave to supplement are still pending before the Court.

Defendants filed motions for summary judgment on September 28, 2011, September 29, 2011, and September 30, 2011. (Case No. 05-174: Docket Entry Nos. 615, 618, 621). Plaintiffs failed to timely respond but filed motions for leave to respond *nunc pro tunc* on December 17, 2011 and December 18, 2011. (Case No. 05-174: Docket Entry Nos. 643, 649, 653). Defendants' motions for summary judgment as well as Plaintiffs' motions for leave to respond are still pending.

On April 26, 2012, Defendants filed a motion for sanctions, claiming that Plaintiffs violated a confidentiality agreement and a local civil rule by disclosing in a court filing certain information concerning mediation. (Case No. 05-174: Docket Entry No. 694). That same day, they also moved to strike certain untimely discovery responses. (Case No. 05-174: Docket Entry No. 696). These motions are currently pending.

On June 7, 2012, Defendants filed a motion for transfer of venue. (Case No. 05-174: Docket Entry No. 708). Magistrate Judge George Cannon denied the motion on August 3, 2012, (Case No. 05-174: Docket Entry No. 742), and Defendants appealed that decision on August 17, 2012, (Case No. 05-174: Docket Entry No. 749). That appeal is still pending.

Defendants then filed two motions to disqualify Plaintiffs' counsel, Rohn & Associates. The first motion to disqualify, filed on June 10, 2012, concerns Rohn & Associates' employment relationship with Talib Ellison ("Ellison"), a former associate of Defendants' counsel. (Case No. 05-174: Docket Entry Nos. 709, 710, 711). The second motion to disqualify, filed on October 2, 2012, concerns Rohn & Associates' employment relationship with Julie Beberman ("Beberman"), a former law clerk to the District Judge previously assigned to this case, Judge Finch. (Case No. 05-174: Docket Entry Nos. 753, 754).

On May 20, 2013, this case was reassigned to this New Jersey judge. (Case No. 05-174: Docket Entry No. 761). The Court now considers the merits of Defendants' motions to disqualify.

### III. ANALYSIS

"The underlying principle in considering motions to disqualify counsel is safeguarding the integrity of the court proceedings; the purpose of granting such motions is to eliminate the threat that the litigation will be tainted." *Lamb v. Pralex Corp.*, 333 F. Supp. 2d 361, 363 (D.V.I.

July 12, 2004) (citing *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). "Disqualification issues must be decided on a case by case basis and the party seeking disqualification of opposing counsel bears the burden of clearly showing that the continued representation would be impermissible." *Id.* at 364.

"A motion to disqualify counsel requires the court to balance the right of a party to retain counsel of his choice and the substantial hardship which might result from disqualification as against the public perception of and the public trust in the judicial system." *Id.* (citing *Powell*, 287 U.S. at 53); *Smith v. V.I. Water and Power Auth.*, No. 04-148, 2007 WL 5794433, at *2 (D.V.I. Dec. 19, 2007) (explaining that the balancing test also entails consideration of an attorney's freedom to practice law without excessive restrictions). "Because motions to disqualify seek to deprive the opposing party of their counsel of choice, and may be motivated by tactical concerns, they are generally not favored." *Jackson v. Rohm & Hass*, 2008 U.S. Dist. LEXIS 65632, at *5 (E.D. Pa. Aug. 26, 2008) (citations omitted). Indeed, "[i]t is well established that '[m]otions to disqualify are viewed with 'disfavor' and disqualification is considered a 'drastic measure which courts should hesitate to impose except when absolutely necessary.'" *Prosser v. Nat'l Rural Utils. Co-op Fin. Corp.*, No. 08-107, 2009 WL 1605637, at *2 (D.V.I. June 8, 2009) (citations omitted).

In the Virgin Islands, the Model Rules of Professional Conduct ("MRPCs") govern the professional responsibilities of practicing attorneys. *Mathurin v. Sun Contractors, Inc.*, No. 05-183, 2012 WL 3646734, at *2 (D.V.I. Aug. 27, 2012) (citations omitted). Defendants move to disqualify Plaintiffs' counsel (1) on the basis of Plaintiffs' counsel's employment relationship with Ellison under MRPCs 1.9 and 1.10; and (2) on the basis of Plaintiffs' counsel's employment relationship with Beberman under MRPC 1.12.

A. *Motion to Disqualify Based on Employment Relationship with Ellison*

Defendants first argue that Rohn & Associates must be disqualified under MRPCs 1.9 and 1.10 because Rohn & Associates employed Ellison, an attorney who had previously worked as an associate at Defense counsel's firm, Ogletree, Deakins, Nash, Smoak & Stewart ("Ogletree"). (Case No. 05-174: Docket Entry Nos. 709, 710, 711). MRPC 1.9 governs a lawyer's duties to former clients. MRPC 1.9. The Rule provides that

> [a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

MRPC 1.9(a). To determine whether an attorney should be disqualified under Rule 1.9(a), the Court considers (1) whether the party seeking disqualification is a "former client"; and (2) whether the subject matter of the present lawsuit is "the same or substantially related" to the matter in which the attorney represented the former client. *In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 162 (3d Cir. 1984).

Additionally, a conflict of interest under Rule 1.9 is generally imputed to all lawyers in a firm under Rule 1.10. MRPC 1.10. This imputation of a conflict of interest may be avoided if

> (1) the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; (2) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and (3) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

*Id.*

In this case, Ellison began working for Ogletree as an associate in September 2010, having just been admitted to practice law in the Virgin Islands. (Case No. 05-174: Docket Entry No. 723 at 2-3). According to Defendants, in the course of his employment at Ogletree, "Ellison accessed Ogletree's confidential [document management system] and reviewed documents in this very matter on fourteen . . . separate dates . . . ." (Case No. 05-174: Docket Entry No. 710 at 2-3). Defendants apparently do not contend that Ellison performed any work on the instant matter, only that he reviewed documents pertaining to this case in the course of his work at Ogletree. (*Id.*).

On October 7, 2011, Ellison took a paid leave of absence from Ogletree and, on October 26, 2011, informed the firm that he would be resigning effective November 4, 2011. (*Id.* at 3). It appears Ellison contacted Rohn & Associates on October 11, 2011 to discuss the possibility of being hired, and an offer of employment was extended on October 18, 2011. (*Id.*). Under the terms of his employment agreement with Rohn & Associates, Ellison was hired for an initial probationary period, and continued employment was conditioned on the resolution of any conflicts of interest. (Case No. 05-174: Docket Entry No. 723 at 5).

In November 2011, Ellison prepared a draft conflicts letter that was reviewed by Lee Rohn ("Rohn"), an attorney at Rohn & Associates. (*Id.* at 6). Rohn apparently expected Ellison to send the letter to Charles Engeman ("Engeman"), an attorney at Ogletree; however, the letter was not sent at that time. (*Id.*). Instead, it appears that Engeman first learned that Ellison had been hired by Rohn & Associates in an email from Ellison dated December 16, 2011. (*See* Case No. 05-174: Docket Entry No. 710 at 4). In that email, Ellison provided the draft conflicts letter and represented that he would begin employment with Rohn & Associates on December 29, 2011. (*Id.*). In subsequent emails, Engeman learned that Ellison had in fact already begun

7

working for Rohn & Associates; however, Rohn stated that Ellison had previously worked only as a contract attorney. (Case No. 05-174: Docket Entry No. 710 at 4-5).

In January 2012, as Rohn & Associates and Ogletree had failed to resolve the conflicts of interest issue, Rohn & Associates apparently rescinded Ellison's job offer. (Case No. 05-174: Docket Entry No. 723 at 7-8). During his time at Rohn & Associates, Ellison worked remotely on specific assignments, and he did not have access to the firm's case files. (*Id.* at 7, 20-21). Ellison also apparently never spoke with any attorney at Rohn & Associates about this case. (*Id.* at 7).

The facts of this case reveal Rohn's deficient behavior concerning her professional responsibilities when hiring a new lawyer. Rohn offered Ellison employment and then did practically nothing to facilitate his working at her firm. She blames Engeman for not doing enough to help Ellison with his conflicts of interest; however, she was also deficient in her efforts to address any potential issues, leaving the matter solely to Ellison to resolve. Rohn clearly should have worked collaboratively with Engeman to resolve the conflicts of interest and assure clients that Ellison was timely and effectively screened in his work at Rohn & Associates.

Despite this, disqualification does not seem to be warranted at this time. In reaching this decision, the Court emphasizes the unique facts of this case. In particular, the Court notes the lengthy and protracted nature of the litigation and the numerous motions still pending before the Court. This is not a case that new counsel could readily take over from Rohn & Associates. Disqualification would impose significant costs on Plaintiffs and exacerbate the significant delays in the progress of the case. The Court is also sensitive to the practical issues that stem from the limited size of the legal market in the Virgin Islands and the many potential conflicts of interest that are wont to arise as a result.

Additionally, the Court cannot say with certainty that Ellison was not effectively screened during his association with Rohn & Associates or that her handling of him was not constructive screening. He performed only discrete research assignments on specific cases (not this case), worked remotely with no access to Rohn & Associates' case files, and did not communicate with any attorneys at the firm regarding this matter. In essence, Ellison was a contract attorney who performed limited functions during his brief employment with Rohn & Associates. As such, the Court cannot say that Ellison was not effectively screened from the instant matter and that disqualification and the costs and delay that would inevitably result from disqualification are necessary at this time. The Court, therefore, finds that Defendants' motion to disqualify Plaintiffs' counsel on the basis of its affiliation with Ellison should be denied.

*B. Motion to Disqualify Based on Employment Relationship with Beberman*

Defendants also argue that Rohn & Associates must be disqualified under MRPC 1.12 because of its employment relationship with Beberman, a former law clerk to Judge Finch. (Case No. 05-174: Docket Entry Nos. 753, 754). MRPC 1.12 sets forth certain ethical obligations of former judges and law clerks. MRPC 1.12. The Rule states in relevant part that "a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person . . . unless all parties to the proceeding give informed consent, confirmed in writing." MRPC 1.12(a).

Furthermore, "[i]f a lawyer is disqualified [in this way], no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter" unless (1) "the disqualified lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom;" and (2) "written notice is promptly given to the parties

9

and any appropriate tribunal to enable them to ascertain compliance with the provisions of this rule." MRPC 1.12(c). As such, a conflict arising under MRPC 1.12(a) is imputed to an entire firm only if the lawyer is "associated" with that firm.

"Determining whether an attorney is associated or unassociated requires an analysis of all the circumstances" with no one factor being determinative. *Mituma v. Syn-Tech Sys., Inc.*, No. 11-430, 2012 WL 4758171, at *3 (N.D. Fla. Oct. 5, 2012); *see also* ABA COMM. ON ETHICS AND PROFESSIONAL RESPONSIBILITY, Formal Op. 88-356. As such, a temporary lawyer may not be "associated" with a firm for imputation purposes in certain circumstances. *See* Formal Op. 88-356. "The question whether a temporary lawyer is associated with a firm at any time must be determined by a functional analysis of the facts and circumstances involved in the relationship between the temporary lawyer and the firm consistent with the purposes for the Rule." *Id*. For example, a temporary lawyer may not be "associated" with a firm if he has access to files of "only a limited number of clients" and participated in the "discussion of the affairs of no other clients." *Id.*; *see also Mituma*, 2012 WL 4758171, at *3 (finding a temporary lawyer not associated with a firm where the lawyer worked only from home, did only work for review by another attorney, had no client contact or expectation of advancement, and did not receive benefits otherwise available to associates).

Defendants argue that disqualification is necessary due to Rohn & Associates' employment relationship with Beberman, an attorney who repeatedly moved between positions with Rohn & Associates and Judge Finch. Beberman first served as a law clerk for Judge Finch from 1996 to 1998. (Case No. 05-174: Docket Entry No. 754 at 1 n.1). She then went to work as an associate for Rohn & Associates from 1999 to 2000. (*Id.*). In November 2001, Beberman returned to work for Judge Finch until January 15, 2010. (*Id.* at 1). From the time this case was

filed in November 2005, until Beberman stopped working for Judge Finch in January 2010, this case was assigned to Judge Finch. (*Id.*). During that time, three orders bearing Beberman's initials were entered by Judge Finch.[3] (*Id.* at 2). After leaving Judge Finch's chambers, Beberman worked for the State Department and also did contract work for Rohn & Associates. (*Id.*). Defendants argue that this last period of employment with Rohn & Associates created an impermissible conflict of interest in the present case that mandates disqualification.

The Court does not agree. In short, although Beberman performed contract work for Rohn & Associates in 2010 and 2012, Beberman was not "associated" with the firm for imputation purposes at any time after she left Judge Finch's chambers. In reaching this conclusion, the Court notes that Beberman never worked on this case for Rohn & Associates. (Case No. 05-174: Docket Entry No. 755 at 4). Instead, she was paid an hourly rate to work on an "ongoing, as needed, per project term" on a total of seven unrelated cases. (Case No. 05-174: Docket Entry Nos. 754 Attach. 2, 755 at 2-3). For those cases, she performed discrete legal research assignments, and she was provided with information about only those cases. (Case No. 05-174: Docket Entry No. 755 at 2-3). She did not have general access to the physical case files at Rohn & Associates, nor did she have an office there. (*Id.*). Furthermore, she did not discuss with any member of the firm any cases except those to which she was assigned. (*Id.* at 4). As such, the Court finds that Beberman was a temporary employee not associated with Rohn & Associates for the purposes of MRPC 1.12. Therefore, disqualification of Rohn & Associates is not appropriate at this time.

---

[3] The first order bearing Beberman's initials is dated August 13, 2007, and concerned Defendants' first motion to stay pending arbitration. (*Id.* at 2). The second order, also dated August 13, 2007, granted Plaintiffs' motion for reconsideration of an order that required Plaintiffs to pay Defendants' costs and fees. (*Id.*). The final order bearing Beberman's initials is dated March 24, 2008, and reopened the time for filing an appeal. (*Id.*).

11

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to disqualify Plaintiffs' counsel are denied. An appropriate order will follow.

_____
ANNE E. THOMPSON, U.S.D.J.

Date: June 12, 2013