NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

Juan MENDEZ, et al.,

    Plaintiffs,

v.

PUERTO RICAN INTERNATIONAL
COMPANIES, INC., et al.,

    Defendants.

Civ. No. 05-174

(Consolidated with No. 05-199)

MEMORANDUM OPINION

THOMPSON, U.S.D.J.[1]

    The above-captioned consolidated matter[2] is before the Court on Defendant Hovensa, LLC's ("Hovensa's") Second Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (Doc. No. 621). Plaintiffs[3] have opposed. (Doc. No. 654). The Court has issued

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

[2] This case has been consolidated with *Shawn Smith, et al. v. Puerto Rican Int'l Cos., et al.*, Civ. No. 05-199. The two cases were consolidated on March 24, 2006. (*Smith*, Civ. No. 05-199, Doc. No. 27). For ease of analysis, where this Opinion refers to a document that has been submitted to both case dockets the citation will reflect the document as numbered in *Mendez*, Civ. No. 05-cv-174. Any exception will be noted.

[3] Fifteen Plaintiffs remain in this action: Bienvenido Carrasco, Raquel Concepcion, Mercedes Cruz, Jose Gonzales, Heriberto Laboy, Robert Jones-Charleman, Lucho Hernandez, Waldemar Olmeda, Orlando Pagan, Michael Bynoe, Shawn Smith, Juan Mendez, Sandro Rivera, Sencion Guerrero, and Felipe Figuero. Originally, this action involved 48 Plaintiffs. Eight Plaintiffs were ordered to engage in arbitration, and settled their claims: Thomas Duparl, Pius Aurelien, Ira Claxton, Bertril Williams, Mark Vitalis, Joseph Oscar, Gregory LaForce and Nathaniel Hobson. In March 2012, the remaining Plaintiffs engaged in mediation, with the result that an additional 22 Plaintiffs settled their claims: Sabino Castillo, Alfredo Diaz, Orson Flemming, Maximo Guerrero, Marcel Hippolyte, Miguel Liriano, Joseph Nicholas, Humberto Ortiz, Marco Rijo, Ernesto Rodriguez, Catherine Sabin, Cyril Thomas, Angel Lopez, Angel Martinez, Jorge Rodriguez, Marcelo Landers, Elrod Baptiste, Sostenes Montilla, Carlos Garcia, Keith Simon, George Acosta, and Rudolph Kock. Three Plaintiffs, Alfred James, Luis Medina, and Josh Gondelec, have been dismissed for failure to prosecute their claims. (Doc. No. ___). Finally,

the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons included herein, the Court will grant Hovensa's motion for summary judgment with respect to all claims.

## BACKGROUND[4]

The plaintiffs in this action are former employees of Puerto Rican International Companies, Inc. ("PIC"), a subcontractor working at the Hovensa Refinery during 2004. Based upon the events occurring in and around the time of their employment, Plaintiffs have brought suit based upon race, color, and national origin discrimination. In seven counts, Plaintiffs allege: (1) violations of Title VII of the Civil Rights Act of 1967 ("Title VII"), 42 U.S.C. §§ 1000e, *et seq.*; (2) violations of the Virgin Islands Civil Rights Act ("VICRA"), 10 V.I.C. §§ 1-10, §§ 64, *et seq.*, 24 V.I.C. § 451; (3) breach of the implied covenant of good faith and fair dealing; (4) violations of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. §§ 76-79; (5) intentional and/or negligent infliction of emotional distress; (6) tortious interference with an employment relationship; and (7) punitive damages. (Doc. No. 558, Second Amended Complaint). Count VI, tortious interference with an employment relationship, does not apply to Hovensa.

While Hovensa has separately submitted a joint motion for summary judgment on the merits along with co-defendants Fluor Corporation, Fluor Enterprises, Inc., Plant Performance Services LLC, and Plant Performance Services International, Ltd. (collectively, the "Fluor Defendants"), (Doc. Nos. 619, 620), Hovensa here contends that, regardless of the merits of

---

Plaintiffs have informed the Court that an additional three Plaintiffs – Sandro Rivera, Sencion Guerrero, and Felipe Figueroa – have reached an agreement with the Defendants for the settlement of their claims. (Doc. No. 785).

[4] Simple citations to the Fluor Defendants' Statement of Undisputed Material Facts refer to those facts undisputed by Plaintiff. Where there is some apparent dispute but the citation is still to the Fluor Defendants' Statement of Undisputed Material Facts, the Court has attempted to distill and include here that version of events that falls along the points of agreements between the parties. Otherwise, statements are Court findings of fact based upon an independent review of the evidence.

2

Plaintiffs' claims, Hovensa cannot be held liable where Hovensa was not Plaintiffs' direct or joint employer. Plaintiffs oppose, arguing that Hovensa is liable as Plaintiff's employer under both a common law agency theory and as Plaintiffs' joint employer. The relevant factual background for this motion is as follows:

In 2003, Hovensa hired General Electric International, Inc. ("GEI") on a lump sum basis to serve as the prime contractor during the construction phase of the FCC Power Recovery System project ("the project") at the Hovensa Refinery in St. Croix. (Doc. No. 623, Statement of Undisputed Material Facts ("SUMF"), ¶¶ 1, 2). Hovensa's contract with GEI expressly delegated to GEI all authority for employing the personnel necessary to perform the work, including hiring, discharging, classifying, and supervising and controlling the manner of performance of the work. (Doc. No. 623, SUMF, ¶ 4).

GEI hired Plant Performance Services International, Ltd. ("PPSI") to provide construction services on the project. (Doc. No. 623, SUMF, ¶ 5). PPSI is a subsidiary of Defendant Fluor Enterprises, Inc. ("FEI"), which is, in turn, a subsidiary of Fluor Corporation, a holding company. (Doc. No. 623, SUMF, ¶ 8). There was no contractual relationship between Hovensa and FEI, or between Hovensa and Fluor Corporation, at any time during 2004. (Doc. No. 623, SUMF, ¶¶ 10, 11).

The contract between GEI and PPSI explained that GEI, as Hovensa's agent, was retaining PPSI as general contractor, but expressly stated that certain duties, responsibilities, and authority were reserved *solely* to GEI (and not Hovensa). (Doc. No. 623, SUMF, ¶ 13). These included, *inter alia*, (1) direction or redirection of PPSI's construction activities; (2) monitoring PPSI's progress and progress reporting based on the established work scope and required completion schedule; (3) verification of the actual progress of the work with authority to approve

3

or disapprove payment of PPSI invoices for progress payments based on actual progress as determined in the sole judgment of GEI; and (4) soliciting, receiving, and approving (or disapproving) Change Orders proposed by PPSI. (Doc. No. 623, SUMF, ¶ 13). In return, PPSI retained all rights to hire and discharge employees, to designate the classification and hours of work for each employee, and to supervise and control the manner and performance of all work. (Doc. No. 623, SUMF, ¶ 14).

Sometime in mid 2004, PPSI contracted with Plaintiffs' employer, PIC, to perform certain work on the project. (Doc. No. 623, SUMF, ¶¶ 7, 15). Hovensa characterizes PIC's performance as providing basic civil work, including excavation and installation of rebar, concrete, and steel, (Doc. No. 623, SUMF, ¶ 15), while Plaintiffs specify that PIC provided general mechanical work services, including the installation of valves, pipes and electrical work, (Doc. No. 650, Att. 1, Plaintiff's Responsive Statement of Facts ("RSOF"), ¶ 15). Plaintiffs were each hired by PIC and reported to Juan Mendez, another PIC employee. (Doc. No. 623, SUMF, ¶¶ 16, 22). Mendez took direction from Clay Redford and Andy Herrera, both employees of PPSI and/or one of the other divisions of Defendant Fluor Corporation. (Doc. No. 623, SUMF, ¶ 17).

Hovensa had no contract with PIC, and was not involved in hiring any of the Plaintiffs involved in this litigation. (Doc. No. 623, SUMF, ¶¶ 18, 20). However, any sub-contract for work at the Hovensa refinery contained a direct reference to Hovensa's workplace violence and antidiscrimination policies. (Doc. No. 650, Att. 1, RSOF, ¶ 19). Hovensa retained the right to expel from the refinery any individual found to be in violation of these policies. (Doc. No. 650, Att. 1, RSOF, ¶ 19).

4

Plaintiffs allege that during their time on the project, they were subjected to racially discriminatory comments and graffiti, and were terminated in retaliation for their complaints about one incident in particular, referred to herein as the "Saucier-Pagan Incident." During the Saucier-Pagan Incident, PPSI supervisor Bobby Saucier made a racially discriminatory comment to PIC employee Orlando Pagan in the presence of other members of Pagan's team. (Doc. No. 623, SUMF, ¶ 25; Doc. No. 650, Att. 1, RSOF, ¶ 25). Hovensa received word of the incident, and alleges that Plaintiffs indicated the matter was resolved at or around the same time. (*See* Doc. No. 623, ¶ 26).

Following the Saucier-Pagan Incident, Plaintiffs were terminated in two sets of layoffs: one in October 2004 and one in December 2004.[5] (Doc. No. 558, Second Amended Complaint; Doc. No. 623, SUMF, ¶¶ 27-28). Hovensa asserts that the layoffs were directed by PPSI, P2S, FEI, and/or PIC. (*See* Doc. No. 623, ¶ 28). The inclusion of Hovensa in this lawsuit now is, according to Hovensa, based upon Plaintiffs' belief that, because Hovensa controls everything that happens at the refinery, Hovensa (1) could have prevented Plaintiffs' layoff and/or termination; and (2) should have expelled Bobby Saucier from the refinery after Plaintiffs reported his alleged use of a racial slur on refinery property. (Doc. No. 623, SUMF, ¶ 24).

After extensive discovery and motion practice, Hovensa has moved for summary judgment based upon a lack of employer and joint employer status, and the Court now decides.

---

[5] The Court is clear to note, however, that two Plaintiffs, Bienvenido Carrasco and Lucho Hernandez, were terminated prior to the Saucier-Pagan Incident. Plaintiffs contend that, despite the factual differences surrounding their termination, Carrasco and Hernandez were still victims of discrimination and retaliation at the refinery.

DISCUSSION

1. **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). The Court must construe all facts and inferences in the light most favorable to the nonmoving party. *Boyle v. City of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The nonmoving party must come forward with specific facts showing a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted). "A factual dispute is 'genuine' and . . . warrants trial 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49, 252 (1986)).

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. If a civil defendant moves for summary judgment on the basis that plaintiff has failed to establish a material fact, the judge must inquire not as to "whether [s]he thinks the evidence unmistakably favors one side or the other but[,] whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 252. A mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.*

2. **Analysis**

In the analysis below, the Court will first consider Hovensa's potential liability under the employment discrimination statutes (asserted in Counts I and II of the Second Amended

6

Complaint) as either a direct or joint employer. The Court will then analyze the remaining counts of the Second Amended Complaint on the merits.

A. Counts I and II: Employment Discrimination Claims under Title VII and VICRA

In order to bring claims under Title VII or VICRA, Plaintiffs must have been, during the relevant period for this action, Hovensa's employees. As Plaintiffs are the employees of the subcontractor for Hovensa's agent's subcontractor, the question is not straightforward. Consulting the relevant provisions of each statute, the Court finds that the definition of "employee" is unclear. With respect to VICRA, Chapter 1 of title 10 of the Virgin Islands Code provides no definition for "employee," and definitions found elsewhere – specifically in Chapters 3, 14, and 18 of Title 24 – do not apply in the present circumstances. Title VII proves equally evasive – defining an employee merely as "an individual employed by an employer." 42 U.S.C. § 2000e(f).[6] Given the variety of employment relationships that abound, this definition is, unquestionably, vague.

In clarifying these ambiguities, both Plaintiffs and Hovensa have advanced two theories by which the Court may determine whether or not Plaintiffs qualify as employees under Title VII or VICRA: (1) the common law theory of agency; and (2) the joint employer doctrine.

Starting with the former, the Supreme Court has stated that "when Congress [uses] the term 'employee' without defining it . . . Congress intend[s] to describe the conventional master-servant relationship as understood by common-law agency doctrine." *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 445 (2006) (quoting *Nationwide Mut.*

---

[6] Title VII does, however, define an employer as one who is, with certain exceptions inapplicable here, "engaged in an industry affecting commerce [with] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. §2000e(b). Thus, while Hovensa qualifies as an employer, the question of whether or not Plaintiffs constitute Hovensa's *employees* remains unresolved.

*Ins. Co., et al. v. Darden* 503 U.S. 318, 322-323 (2003) (internal punctuation omitted)).[7] As the factors for establishing a master-servant relationship focus on the control exercised by the master over the servant, "'the common-law element of control is the principal guidepost that should be followed' in deciding whether an individual is an employee." *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 765 (3d Cir. 2013) (quoting *Clackamas*, 538 U.S. at 448).

Here, the Court finds that the common law agency theory is unlikely to apply to the relationship between Hovensa and Plaintiffs. To start, the Court notes that Hovensa had no contract with PIC or Plaintiffs. Even Hovensa's contract with PPSI, via GEI as Hovensa's agent, delegated to GEI certain supervisory functions over work and employment. GEI alone retained the right to, *inter alia*, direct PPSI's activities and monitor PPSI's progress, provide technical direction for modification of PPSI's work scope, and to solicit, receive, and approve (or disapprove) Change Orders proposed by PPSI associated with any necessary changes in the work. PPSI, in turn, retained the rights to hire and discharge employees, designate the classification and hours of work for each employee, and to supervise and control performance of all work. Finally, the subcontract between PPSI and PIC, delegated additional supervisory and employment matters to PIC, including the authority to hire and fire employees.

Thus, there certainly was no explicit agency relationship between Hovensa and Plaintiffs, and, as described in greater detail below in the Court's discussion on joint employer status, there was insufficient actual control over the manner and means of Plaintiffs' work to warrant a finding of an implied agency relationship.

---

[7] Although *Clackamas* concerned the ADA, and not Title VII, the Third Circuit has declared this distinction to be "without significance" as "[t]he Supreme Court granted certiorari in *Clackamas* to address the conflict among the courts in determining whether an individual qualifies as an employee under the ADA, as well as under other antidiscrimination statutes, including Title VII and the Age Discrimination in Employment Act." *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 766 (3d Cir. 2013).

The Court turns, then, to the question of whether Hovensa may still be held liable for Plaintiffs' claims of discrimination on the theory that Hovensa was Plaintiffs' joint employer. Under the doctrine of joint employers, where an employee is formally employed by one entity, but has "been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity," that employee may bring suit for "violations of employment law [against] the constructive employer." *Mendez v. Hovensa, LLC*, 49 V.I. 826, 834 (D.V.I. 2008) (quoting *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). "The joint employer concept recognizes that the business entities involved are in fact separate[,] but that they share or co-determine those matters governing the essential terms and conditions of employment." *Mendez v. Hovensa*, 49 V.I. at 834 (quoting *N.L.R.B. v. Browning-Ferris Indus. of Penn., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)). In other words, joint employer status may exist "when two entities exercise significant control over [the same] employees." *Graves v. Lowery*, 117 F.3d 723, 727 (3d Cir. 1997).

In analyzing this control, the Court considers such things as "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Mendez*, 49 V.I. at 835-36 (quoting *AT&T v. N.L.R.B.*, 67 F.3d 446, 451 (2d Cir. 1995)). "Although employee expectations are not dispositive of employer status, they are relevant." *Graves*, 117 F.3d at 728-29.

A plaintiff need not demonstrate the presence of all five of the above factors to raise a genuine issue of material fact with respect to joint employer status. In *Mendez*, for example, the court found that the plaintiff had raised a genuine issue of material fact on the sole basis that the

defendant had control over who worked in the refinery and who did not, and had *directed* the plaintiff's employer to terminate the plaintiff's employment. 49 V.I. at 834-36. Similarly, in *Shillingford v. Hess Oil of Virgin Islands*, the court found the plaintiff had raised a genuine issue of material fact with respect to joint employer status even where the defendants had never conducted performance evaluations of plaintiff's work, paid her, paid payroll or security taxes for her, paid for her Workers Compensation insurance, or owned or provided the specialized ticketing equipment she required for her job. CIV.A. 98-232 (Bartle, C.J.), 2009 WL 1765677, at *5 (D.V.I. June 18, 2009). Instead, the court found that a reasonable factfinder could conclude that the defendants were joint employers where (1) the plaintiff worked exclusively on the defendants' property; (2) the defendants provided her with an office, furniture, equipment, and supplies; (3) the plaintiff received her work direction and day-to-day supervision from defendants' employee, who also signed her time sheets; and (4) she was permitted to partake of certain benefits generally reserved for defendants' employees, such as getting water and using the free bus to transport her children after school. *Shillingford*, 2009 WL 1765677 at *5 (citing *Darden*, 503 U.S. at 323-24; *Graves*, 117 F.3d at 727-29; *Dowling v. HOVIC*, No. 98-127, 2008 U.S. Dist. Lexis 72098, at *1 (D.V.I. Sept. 22, 2008)).

As there is no contention here that Hovensa participated in any collective bargaining process, the Court will review only the evidence presented with respect to the first four factors.

**(1) *Hovensa's involvement in Plaintiffs' hire and termination.*** With respect to the first factor for consideration in determining joint employer status, Plaintiffs have failed to dispute that Plaintiffs were hired and fired by parties other than Hovensa. Instead, Plaintiffs contend that Hovensa exercised influence over the hiring process in that each Plaintiff had to be approved by

10

Hovensa prior to beginning work on refinery premises. Any requests for additional manpower also required Hovensa approval.

With respect to termination, Plaintiffs contend that upon notice of their termination, Plaintiffs were escorted to the refinery gate, whereupon *Hovensa* removed their employee badges. Finally, Plaintiffs contend that Hovensa should have intervened to prevent their discriminatory and/or retaliatory termination based upon the workplace violence and antidiscrimination policies included in every subcontract at the refinery.

**(2)** *Hovensa's involvement in administering disciplinary procedures.* With regards to administering disciplinary procedures, Plaintiffs reiterate that Hovensa retained the ability to expel individuals from refinery property based upon any violation of its workplace violence and discrimination policies, and that Hovensa represented to Plaintiffs that it would investigate and resolve any claims of discrimination in connection with the Saucier-Pagan Incident. Indeed, Hovensa had previously expelled a contractor employee where the employee called a Hovensa Accounting Clerk a "bimbo" on a telephone call he believed to be disconnected. Here, however, Plaintiffs contend that Hovensa never conducted any such investigation.

**(3)** *Hovensa's maintenance of records of hours, payroll, and/or insurance.* With respect to the third factor for determining joint employer status, Plaintiffs have produced no evidence that Hovensa was involved in the provision of insurance to Plaintiffs. With respect to hours and payroll, Plaintiffs provide the testimony of PIC employee Cyril Thomas that Thomas clocked in to work on both P2S *and* Hovensa time clocks. Each Plaintiff also received from Hovensa a bar-coded badge required to enter and exit the refinery. In addition to security, this badge was used for the Hovensa timekeeping system, from which Hovensa calculated the amount of money to be paid to PPSI, which was in turn paid to PIC and Plaintiffs.

**(4) *Hovensa's supervision of employees.*** With respect to the fourth element of joint employer status, Plaintiffs contend that Hovensa's own testimony indicates that Hovensa assumed overall responsibility for the execution of the lump sum contract for the project, and that Hovensa's Process Field Operators monitored and supervised all refinery contractors and subcontractors to ensure their day-to-day work met Hovensa's standards, policies, and requirements. Every task performed at the refinery required a Hovensa work permit, and Plaintiffs were required to participate in the mandatory joint site visit and walkthrough with the Hovensa Permit Issuer and/or Worksite Verifier before they could begin work.

Additionally, Hovensa's Health and Safety Program rules provided for "Weekly Safety Walkarounds," to be made by at least two Hovensa management personnel in each area of the refinery to inspect contractor employees' work. Hovensa required weekly safety meetings with its subcontractors; Plaintiffs' attendance was a requirement of their employment. Finally, every subcontract contained a direct reference to Hovensa's workplace violence and antidiscrimination policies, and Hovensa retained the right to remove individuals from refinery property for cause.

***Conclusion with respect to joint employer status.*** Upon review of the above facts, and drawing all inferences in favor of Plaintiffs, the Court does not believe that Plaintiffs have presented sufficient evidence to raise a genuine issue of material fact with respect to Hovensa's joint employer status. Unlike in *Mendez*, Plaintiffs have presented no evidence that Hovensa was involved in the decision to hire or fire Plaintiffs. While there are some similarities between this case and *Shillingford* – such as the fact that Plaintiffs worked exclusively on refinery property and wore a Hovensa badge for security and timekeeping purposes – Plaintiffs have offered no evidence that Hovensa employees supervised Plaintiffs in the manner implied in *Shillingford*, or even evidence that Plaintiffs believed they were Hovensa's employees.

12

The work permits and safety supervision, arguably the strongest basis on which Plaintiffs might present a claim for joint employer status, on the contrary appear to reflect a type of control qualitatively different than that which the four-factor joint employer test is trying to establish. Rather than directly supervising or controlling the manner and means of Plaintiffs' work, Hovensa appears merely to have been attempting to "ensur[e] compliance with safety procedures, promot[e] efficiency, manag[e] its budget, establish[] administrative processes, and maintain[] control over its premises." *DaBronzo v. Roche Vitamins, Inc., et al.*, Civ. No. 02-227 (AET), 232 F. Supp. 2d 306 (D.N.J. 2002). Thus, this Court departs from any implication in *Mendez* that the mere fact that Hovensa could remove personnel from its refinery in certain circumstances would be sufficient to establish joint employer status. Here, no Plaintiffs testified to believing that they were employees of Hovensa, and Hovensa's actions simply do not comport with those expected of a joint employer.

In light of the above findings, then, the Court concludes that Plaintiffs have failed to raise a genuine issue of material fact with respect to whether or not Hovensa was Plaintiff's direct or joint employer. Without a basis on which Plaintiffs may qualify as Hovensa's employees, Plaintiffs cannot sustain their claims against Hovensa under Title VII or VICRA. As such, the Court grants Hovensa's motion for summary judgment with respect to Counts I and II of the Second Amended Complaint.

B. Count III: Breach of the Implied Covenant of Good Faith and Fair Dealing

Turning now to the remaining claims against Hovensa, the Court considers whether Hovensa may still be held liable under Count III of the Second Amended Complaint, breach of the implied covenant of good faith and fair dealing. A party seeking to prevail on a claim for breach of the implied covenant of good faith and fair dealing must demonstrate first "that a

contract existed between the parties," and second, that "in the performance or enforcement of the contract, the opposing party engaged in conduct that was fraudulent, deceitful, or otherwise inconsistent with the purpose of the agreement or the [parties'] reasonable expectations." *LPP Mortgage Ltd. v. Prosper*, 2008 WL 5272723, at *2 (D.V.I. Dec. 17, 2008) (citing, *inter alia*, the Restatement (Second) of Contracts § 205).

Here, the Court finds that Plaintiffs have not demonstrated an actionable contract between Plaintiffs and Hovensa from which a breach could arise. As discussed previously, no employment contract existed between Plaintiffs and Hovensa. Moreover, the Court finds Plaintiffs' arguments that Hovensa's policies concerning workplace violence and harassment constitute a contract unavailing. Plaintiffs have presented no evidence that they even *received* the policies, a necessary threshold for establishing that the policies constituted a contract, explicit or implied. *See, e.g., Fraser v. Kmart Corp.*, Civ. No. 2005-0129, 2009 WL 1124953, *13 (D.V.I. Apr. 24, 2009). Plaintiffs have also failed to present evidence that the policies, by their nature, created a contract. For example, in *Fraser v. Kmart Corp.*, the court determined that in order to convert internal personnel rules into binding contracts, there must have been informed understanding and mutual asset as to the subject covered, and the employer must not have reserved the right for absolute discretion in the modification, amendment, or alteration of the rules "without any input whatsoever from the employee." *Id.* Here, there is no evidence of Plaintiffs' informed understanding and assent prior to or upon receipt, and certainly from the record it appears that Hovensa retained absolute discretion with respect to their modification and enforcement.

Thus, in the absence of a contract either explicit or implied between Plaintiffs and Hovensa, the Court grants Hovensa's motion for summary judgment with respect to Count III of the Second Amended Complaint.

C. Count IV: Violations of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. §§ 76-79

In order to be eligible for protection under the Virgin Islands Wrongful Discharge Act, a plaintiff must have been employed by an employer for at least six months. V.I. Code Ann. tit. 21, § 62. Plaintiffs, in their response to the motion for summary judgment on the merits, (Doc. No. 655), concede that the record fails to demonstrate that any Plaintiff met this six-month requirement. Thus, for good cause shown, the Court grants Hovensa's motion for summary judgment with respect to Count IV of the Second Amended Complaint.

D. Count V: Intentional and/or Negligent Infliction of Emotional Distress

With regards to Count V of the Second Amended Complaint, the Court does not believe that Plaintiffs have asserted a *prima facie* case of either intentional or negligent infliction of emotional distress. Starting with the former, "[t]he Virgin Islands recognizes the tort of intentional infliction of emotional distress ["IIED"] as defined in the Restatement (Second) of Torts § 46 (1965)." *Thomas Hyll Funeral Home, Inc. v. Bradford*, 233 F. Supp. 2d 704, 714 (D.V.I. 2002) (citing *Seafarers Int'l Union of North America v. Thomas*, 42 F. Supp. 2d 547, 557, n. 11 (D.V.I. App. Div. 1999)). Pursuant to § 46(1), a plaintiff wishing to prevail on such a claim must demonstrate that a defendant has "by extreme and outrageous conduct intentionally or recklessly cause[d] [plaintiff] severe emotional distress." Restatement (Second) of Torts § 46 (1965). The conduct must have been "so outrageous in character, and so extreme in degree, *as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly*

15

*intolerable in a civilized community.*" *Id.* at § 46 cmt. d.; *Thomas Hyll Funeral Home, Inc.*, 233 F. Supp. 2d at 714 (citing *Seafarers Int'l*, 42 F. Supp. 2d at 557).

In the employment context, "[i]t is extremely rare to find conduct . . . that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Greene v. Virgin Islands Water & Power Auth.*, 1:06-CV-11, 2011 WL 3032466 (D.V.I. July 22, 2011), *reconsideration denied,* 1:06-CV-11, 2012 WL 4755061 (D.V.I. Oct. 5, 2012) (quoting *Ramos v. St. Croix Alumina, L.L.C.*, 277 F. Supp. 2d 600, 604 (D.V.I. 2003) (overruled in part on other grounds)). Indeed, "[d]iscrimination alone does not state a claim for intentional infliction of emotional distress." *Id.*

With regards to the *negligent* infliction of emotional distress, a plaintiff must identify negligent conduct on the part of defendant; the plaintiff must then show that "the negligent conduct . . . placed [the plaintiff's safety] in danger," and that "the plaintiff . . . suffered some physical harm as a result of the emotional distress." *Fenton v. C&C Constr. & Maint., Inc., et al.*, 48 V.I. 263 (V.I. Super. 2007); *Mingolla v. Minnesota Min. & Mfg. Co.*, 893 F. Supp. 499, 506 (D.V.I. 1995).

Upon a thorough review of the record, however, the Court does not believe that the evidence demonstrates that Hovensa engaged in either outrageous or negligent conduct, or that severe emotional distress resulted from such conduct. The racially derogatory comments issued from non-Hovensa employees and, regardless of any obligations on Hovensa's part to investigate Plaintiffs' claims of discrimination, Hovensa's failure to remove Saucier from the refinery or to prevent Plaintiffs' termination simply does not appear to rise to the level of conduct required for either an intentional or negligent infliction of emotional distress. *See, e.g., Hare v. H&R Indus., Inc.*, 67 Fed. App'x 114 (3d Cir. 2003) (finding sufficient support for a claim of IIED where

16

plaintiff's boss and coworkers harassed her at least ten different times over the course of four months, leading her to experience symptoms such as daily vomiting and suicidal thoughts).

In light of the above, the Court grants Hovensa's motion for summary judgment with respect to Count V.

E. Count VII: Punitive Damages

Given that the Court has failed to find Hovensa liable for any of the other counts brought in the Second Amended Complaint, Plaintiffs cannot sustain an independent claim of punitive damages with respect to Hovensa. As such, the Court grants summary judgment in favor of Hovensa with regards to Count VII of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court grants Hovensa's Second Motion for Summary Judgment, (Doc. No. 621), in its entirety. An appropriate Order accompanies this Opinion.

_____
ANNE E. THOMPSON, U.S.D.J.

Dated: 10/4/13