NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT
DISTRICT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

Juan MENDEZ, et al.,

          Plaintiffs,

v.

PUERTO RICAN INTERNATIONAL
COMPANIES, INC., et al.,

          Defendants.

Civ. No. 05-174

(Consolidated with
No. 05-199)

MEMORANDUM OPINION

THOMPSON, U.S.D.J.[1]

The above-captioned consolidated matter[2] is before the Court upon the Motion of

Defendants Fluor Corporation, Fluor Enterprises, Inc., Plant Performance Services, LLC, and

Plant Performance Services International, Ltd. (collectively, the "Fluor Defendants") for

Summary Judgment based upon a Lack of Joint Employer Status. (Doc. Nos. 615, 616, 617).

Plaintiffs[3] have opposed. (Doc. No. 642). The Court has decided the motion based upon the

---

[1] The Hon. Anne E. Thompson, United States District Judge for the District of New Jersey, sitting by designation.

[2] This case has been consolidated with *Shawn Smith, et al. v. Puerto Rican Int'l Cos., et al.*, Civ. No. 05-199. The two cases were consolidated on March 24, 2006. (*Smith*, Civ. No. 05-199, Doc. No. 27). For ease of analysis, where this Opinion refers to a document that has been submitted to both case dockets, the citation will only reflect the document as numbered in *Mendez*, Civ. No. 05-174. Any exception will be noted.

[3] Fifteen Plaintiffs remain active in this litigation: Bienvenido Carrasco, Raquel Concepcion, Mercedes Cruz, Jose Gonzales, Heriberto Laboy, Robert Jones-Charleman, Lucho Hernandez, Waldemar Olmeda, Orlando Pagan, Michael Bynoe, Shawn Smith, Juan Mendez, Sandro Rivera, Sencion Guerrero, and Felipe Figueroa. Originally, this action involved 48 Plaintiffs. Eight Plaintiffs were ordered to engage in arbitration and settled their claims: Thomas Duparl, Pius Aurelien, Ira Claxton, Bertril Williams, Mark Vitalis, Joseph Oscar, Gregory LaForce and Nathaniel Hobson. In March 2012, the remaining Plaintiffs engaged in mediation with the result that an additional 22 Plaintiffs settled: Sabino Castillo, Alfredo Diaz, Orson Flemming, Maximo Guerrero, Marcel Hippolyte, Miguel Liriano, Joseph Nicholas, Humberto Ortiz, Marco Rijo,

1

written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b).  For the reasons included herein, the Court will grant in part and deny in part the Fluor Defendants' motion.

BACKGROUND

During the latter half of 2004, Plaintiffs were employed by subcontractor Puerto Rican International Companies, Inc. ("PIC") to work on a construction project at the Hovensa Refinery. Based upon the events occurring in and around the time of their employment, Plaintiffs have brought a discrimination suit based upon race, color, and national origin.  In seven counts, Plaintiffs allege: (1) violations of Title VII of the Civil Rights Act of 1967 ("Title VII"), 42 U.S.C. §§ 1000e, *et seq.*; (2) violations of the Virgin Islands Civil Rights Act ("VICRA"), 10 V.I.C. §§ 1-10, §§ 64, *et seq.*, 24 V.I.C. § 451; (3) breach of the implied covenant of good faith and fair dealing; (4) violations of the Virgin Islands Wrongful Discharge Act, 24 V.I.C. §§ 76-79; (5) intentional and/or negligent infliction of emotional distress; (6) tortious interference with an employment relationship; and (7) punitive damages.  (Doc. No. 558, Second Amended Complaint).

While the Fluor Defendants have separately submitted a motion for summary judgment on the merits along with co-defendant Hovensa, LLC ("Hovensa"), (Doc. Nos. 619, 620), they contend here that, regardless of the merits of Plaintiffs' claims, the Fluor Defendants cannot be held liable for Plaintiffs' employment discrimination claims where the Fluor Defendants were not (1) Plaintiffs' direct employers; (2) in an agency relationship with PIC; or (3) in a joint-

_____

Ernesto Rodriguez, Catherine Sabin, Cyril Thomas, Angel Lopez, Angel Martinez, Jorge Rodriguez, Marcelo Landers, Elrod Baptiste, Sostenes Montilla, Carlos Garcia, Keith Simon, George Acosta, and Rudolph Kock.  Three Plaintiffs, Alfred James, Luis Medina, and Josh Gondelec have been dismissed for lack of prosecution.  (Doc. No. ___ ).  The Court has further been informed that an additional three Plaintiffs have agreed to settle, with papers pending: Sandro Rivera, Sencion Guerrero, and Felipe Figueroa.  (Doc. No. 785).

employer relationship with PIC and Plaintiffs.  The Fluor Defendants argue further that, even if the Court finds one or more of the Fluor Defendants to be a joint employer, the corporate structure and activities of the Fluor Defendants are not sufficiently intertwined so as to impute liability from one Fluor Defendant to another on the theory that they constitute a single employer.  Plaintiffs oppose, arguing that the Fluor Defendants are liable under both an agency and joint-employer theory, and that their operations are sufficiently intertwined so as to support a finding of liability.  The relevant factual background for this motion is as follows:

In or around 2004, Hovensa contracted with General Electric International, Inc. ("GEI") to manage an FCC expander project (hereinafter, "the project"), at its refinery in St. Croix. (Doc. No. 617, Statement of Undisputed Material Facts, "SUMF", ¶¶ 1, 2).  Hovensa and GEI contracted with Plant Performance Services International, Ltd. ("PPSI") to serve as general contractor for the project's mechanical work and construction services.  (Doc. No. 617, SUMF, ¶ 12).  PPSI, in turn, sub-contracted with PIC for general mechanical work services, including the installation of valves, pipes and minor electrical work.  (Doc. No. 617, SUMF, ¶ 18).  PIC hired Plaintiffs for purposes of welding, pipefitting, and other labor.  (*See* Doc. No. 617, SUMF, ¶ 18).  Each Plaintiff admits that he or she was hired as an employee for PIC sometime in 2004, and each was let go that same year.  (*See* Doc. No. 617, SUMF, ¶¶ 1-36).

PPSI, the entity who subcontracted with PIC, is a subsidiary of Fluor Enterprises, Inc. ("FEI").  (Doc. No. 617, SUMF, ¶ 13).  FEI is under the umbrella of Fluor Corporation ("Fluor"), a holding company.  (Doc. No. 617, SUMF, ¶¶ 3, 4).  FEI does not appear to have had a direct contractual relationship regarding Plaintiffs' work on the project, but does appear to have been otherwise involved in the project via certain provisions of labor and management. (Doc. No. 617, SUMF, ¶ 5; *see also* Doc. No. 637, Att. 1, Pls.' Resp. Statement of Facts,

"RSOF," ¶ 5).  Specifically, FEI secunded employees to PPSI and provided other materials, such as hardhats.  (*See* Doc. No. 637, Att. 1, Pls.' Resp. Statement of Facts, "RSOF," ¶ 5).  The secunded employees included, among others, Project Manager Clay Redford, Construction Manager Andy Herrera, Human Resources/Industrial Relations Manager Juan Morales, Jr., and Safety Manager Donald Mitchell.  (Doc. No. 617, SUMF, ¶ 7; Doc. No. 637, RSOF, ¶ 5).

PPSI was touted as a Bermuda limited liability company, but is now dormant and has no employees.  (Doc. No. 637, RSOF, ¶ 13; Doc. No. 638, Att. 7, Ex. 20, PPSI Dep., 45:21-46:20).  As such, PPSI's records were purportedly shipped to P2S's offices in Houston, Texas at the close of the project, and then were shipped from Houston to FEI's main office in Greenville, South Carolina, where they are presently maintained by FEI.  (Doc. No. 637, Att. 1, RSOF, ¶ 13).  Emails involving PPSI were produced from storage on IBM servers on behalf of Defendants FEI and Fluor Corporation.  (Doc. No. 637, Att. 1, RSOF, ¶ 13).

PPSI is the sister company to Plant Performance Services, LLC ("P2S"), another subsidiary of FEI.  (Doc. No. 617, SUMF, ¶ 14).  P2S was not a party to the construction contract between PPSI and Hovensa/GEI, but does appear to have entered into a *separate* contract with GEI to provide engineering and procurement services.  (Doc. No. 664, Defs.' Resp. to Counter Statement of Facts ("CSOF"), ¶ 3).  P2S had no physical office space at the Hovensa Refinery.  (Doc. No. 617, SUMF, ¶ 11).

Legally, PIC was not a subsidiary of PPSI, P2S, FEI, or Fluor.  (Doc. No. 617, SUMF, ¶ 20).  As for the subcontract between PIC and PPSI, the contract terms specifically stated that PIC was neither an agent nor an employee of PPSI, but an independent contractor.  (Doc. No. 617, SUMF, ¶ 19).  According to the contract, PIC was to be responsible for the supervision of all PIC employees on the project, and was to be "solely responsible for determining the means

and methods of performing the work." (Doc. No. 617, SUMF, ¶ 19). However, under the subcontract, PPSI did reserve the right to have PIC remove and/or replace personnel on the project. (Doc. No. 617, Att. 11, Ex. K PPSI-PIC Subcontract, 22.1).

Sometime in September 2004, a PPSI supervisor, Bobby Saucier, made racist comments to a PIC employee, Orlando Pagan, and other members of Pagan's team (the "Saucier Pagan Incident"). (Doc. No. 617, SUMF, ¶ 38). After the employee reported the incident to PIC management, PPSI was notified. (Doc. No. 617, SUMF, ¶ 39). During the course of PPSI's investigation, Saucier admitted to using inappropriate language; he was asked to apologize and issued a warning and reprimand. (Doc. No. 617, SUMF, ¶¶ 39-40). Prior to issuing the reprimand, PPSI HR Manager Morales consulted with P2S for confirmation that he was correctly documenting the corrective action against Saucier. (Doc. No. 617, SUMF, ¶ 42).

In October 2004, PPSI Project Manager Clay Redford met with PIC management to discuss PIC's productivity. (Doc. No. 617, SUMF, ¶¶ 29-30). Dozens of PIC employees, including PIC Project Manager Juan Mendez, were subsequently terminated from the project. (Doc. No. 617, SUMF, ¶¶ 29-30). Shortly thereafter, GEI terminated its contract with PPSI. (Doc. No. 617, SUMF, ¶ 32). PPSI severed its contract with PIC in turn, and the remaining PIC employees were terminated in December 2004. (Doc. No. 617, SUMF, ¶ 33). Following termination, Plaintiffs filed suit. After extensive discovery and motion practice, the Fluor Defendants have raised the present motion for summary judgment, and the Court now decides.

DISCUSSION

**1. Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

5

R. Civ. P. 56(c)(2).  The Court must construe all facts and inferences in the light most favorable to the nonmoving party.  *Boyle v. City of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998).  The nonmoving party must come forward with specific facts showing a genuine issue for trial.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations omitted).  "A factual dispute is 'genuine' and . . . warrants trial 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Brightwell v. Lehman*, 637 F.3d 187, 194 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49, 252 (1986)).

In deciding a motion for summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.  If a civil defendant moves for summary judgment on the basis that plaintiff has failed to establish a material fact, the judge must inquire not as to "whether [s]he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented."  *Id.* at 252.  A mere "scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id.*

## 2. Analysis

In determining whether each of the Fluor Defendants might be held liable for Plaintiffs' claims, the Court will divide the analysis into two parts.  First, the Court will analyze whether or not any of the Fluor Defendants may be characterized either as Plaintiffs' employer under the common law theory of agency or as Plaintiffs' joint employer.  If one or more of the Fluor Defendants may be characterized as such, the Court will then evaluate whether or not liability may be imputed to the remaining Fluor Defendants, based upon the relationship between entities.

i.     Common Law Theory of Agency and the Joint Employer Doctrine

In order to bring claims under either Title VII or VICRA, a plaintiff must qualify as the defendant's employee.  As Plaintiffs are the employees of PPSI's subcontractor, PIC, and as PPSI is a subsidiary of and sister company to the other Fluor Defendants, the relationship between Plaintiffs and the Fluor Defendants is not, upon first glance, easily defined.  Consulting the relevant provisions of each statute, the Court finds that neither furnishes a definition of employee that sheds definitive light on the issue.  With respect to VICRA, the relevant provision does not define "employee."  *See* 10 V.I.C. § 1.  Definitions found elsewhere in the statute – specifically in Chapters 3, 14, and 18 of Title 24 – are inapplicable to Plaintiffs' present situation.  Title VII proves equally unenlightening, stating only that an employee, with certain exceptions inapplicable here, is "an individual employed by an employer."  42 U.S.C. § 2000e(f).[4]  Given the variety of employment relationships that abound, this definition is, unquestionably, vague.

The Supreme Court has stated that "when Congress [uses] the term 'employee' without defining it . . . Congress intend[s] to describe the conventional master-servant relationship as understood by common-law agency doctrine."  *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 445 (2006) (quoting *Nationwide Mut. Ins. Co., et al. v. Darden*, 503 U.S. 318, 322-323 (2003) (internal punctuation omitted)).[5]  The factors for establishing a master-

---

[4] Title VII does, however, define an employer as one who is "engaged in an industry affecting commerce [with] fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person."  42 U.S.C. §2000e(b).

[5] Although *Clackamas* concerned the ADA, and not Title VII, the Third Circuit has declared this distinction to be "without significance" as "[t]he Supreme Court granted certiorari in *Clackamas* to address the conflict among the courts in determining whether an individual qualifies as an employee under the ADA, as well as under other antidiscrimination statutes, including Title VII and the Age Discrimination in Employment Act."  *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 766 (3d Cir. 2013).

servant relationship focus on the control exercised by the master over the servant; indeed "'the common-law element of control is the principal guidepost that should be followed' in deciding whether an individual is an employee." *Mariotti v. Mariotti Bldg. Prods., Inc.*, 714 F.3d 761, 765 (3d Cir. 2013) (quoting *Clackamas*, 538 U.S. at 448).

Here, both the Fluor Defendants and Plaintiffs characterize this agency-focused inquiry as one involving whether "the employer assumes the right to control the time, manner, and method of executing the work, as distinguished from the right merely to require certain definite results in conformity to the contract." *AM. Tel & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1435 (3d Cir. 1994) (internal citations omitted).

Alternatively, courts have found that an entity may be liable under Title VII if found to be a plaintiff's joint employer. Under the joint employer doctrine, where an employee is formally employed by one entity but has "been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity," that employee may bring suit for "violations of employment law [against] the constructive employer." *Mendez v. Hovensa, LLC*, 49 V.I. 826, 834 (D.V.I. 2008) (quoting *Arculeo v. On-Site Sales & Marketing, LLC*, 425 F.3d 193, 198 (2d Cir. 2005)). In other words, "[t]he joint employer concept recognizes that the business entities involved are in fact separate[,] but that they share or co-determine those matters governing the essential terms and conditions of employment." *Id.* (quoting *N.L.R.B. v. Browning-Ferris Indus. of Penn., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982)). In evaluating a defendant organization's status as a joint employer, the Court should look to "the level of control the organization asserts over the individual's access to employment and the organization's power to deny such access." *See Graves v. Lowery*, 117 F.3d 723, 728 (1997).

As with the common-law agency doctrine, the heart of the joint employer doctrine is the level of control exerted by the company over the alleged employee. *Mendez*, 49 V.I. at 835-36. In evaluating this control, the Court must be mindful of considering evidence both inside and outside of any contractual relationship. *See, e.g.*, *Shillingford v. Hess Oil of Virgin Islands*, CIV.A. 98-232 (Bartle, C.J.), 2009 WL 1765677, at *5 (D.V.I. June 18, 2009) (quoting *Graves*, 117 F.3d at 728) ("[I]t is 'the nature of the relationship' rather than any technical label or formality that determines employer status."). Factors to consider include "whether the alleged joint employer (1) did the hiring and firing; (2) directly administered any disciplinary procedures; (3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Mendez*, 49 V.I. at 835 (quoting *AT&T v. N.L.R.B.*, 67 F.3d 446, 451 (2d Cir. 1995)).

The presence of just *one* of the aforementioned factors could be sufficient to raise a genuine issue of material fact as to joint employer status. In *Mendez*, for example, the court found that the plaintiff had raised a genuine issue of material fact on the basis of (1) evidence that the defendant had *directed* the plaintiff's employer to terminate the plaintiff's employment, and (2) plaintiff's testimony that the defendant controlled who could work on the premises. 49 V.I. at 834-36; *see also*, *Mendez*, Case No. 1:02-cv-00169-TJS, Doc. No. 255, Att. 1.

Similarly, in *Shillingford v. Hess Oil of Virgin Islands*, the court found that the plaintiff had raised a genuine issue of material fact with respect to joint employer status even where the defendants had never conducted performance evaluations of the plaintiff's work, paid her, paid payroll or security taxes for her, paid for her Workers Compensation insurance, or owned or provided the specialized ticketing equipment she required for her job. 2009 WL 1765677, at *5. Instead, the court found that a reasonable factfinder could conclude that defendants were joint

employers where (1) the plaintiff worked exclusively on the defendants' property; (2) the defendants provided her with an office, furniture, equipment, and supplies; (3) the plaintiff received her work direction and day-to-day supervision from defendants' employee, who also signed her time sheets; and (4) she was permitted to partake of certain benefits generally reserved for defendants' employees, such as getting water and using the free bus to transport her children after school. *Shillingford*, 2009 WL 1765677 at *5 (citing *Darden,* 503 U.S. at 323-24; *Graves,* 117 F.3d at 727-29; *Dowling v. HOVIC,* No. 98-127, 2008 U.S. Dist. Lexis 72098, at *1 (D.V.I. Sept. 22, 2008)).

In this case, the parties appear to accept that the above doctrines apply to both Title VII and VICRA.  Moreover, as the focus of the agency and joint employer inquiries overlap, and as the parties proffer similar arguments and evidence for each, the Court will analyze them concurrently below.

As an initial matter, there is here no question that Plaintiffs were hired by PIC.  Nor is there dispute that the contract terms between PIC and PPSI designated PIC as an independent contractor, and explicitly stated that PIC was neither an agent nor employee of PPSI.  (Doc. No. 617, SUMF, ¶ 19).  The contract further specified that PIC would "furnish all labor, supervision, personnel, facilities, equipment, materials, and services necessary" to perform work on the project.  (Doc. No. 617, SUMF, ¶¶ 19-20, 24-25).

However, Plaintiffs argue that, regardless of the contract's statements as to PIC's independent contractor status, the Fluor Defendants exercised significant control over the time, manner, and method of Plaintiffs work, and satisfied the various factors utilized in determining joint employer status.  To start, Plaintiffs argue that PPSI controlled Plaintiffs' access to employment by directing PIC to terminate their employment.  In a meeting on St. Croix on or

about October 25, 2004, Clay Redford discussed purported productivity issues with PIC management.  According to Plaintiffs, Redford had a written list of employees to be removed from the project, including PIC Project Manager Juan Mendez.  Plaintiffs allege that there then followed some negotiation between Redford and PIC General Manager Pedro Laboy for permission to retain a few of the employees listed for termination.  There is further evidence that PPSI approved Project Manager Juan Mendez' replacement, Jose Chavez.  Plaintiffs contend this evidence demonstrates PPSI's undoubted control over Plaintiffs' access to employment, and is consistent with the power of a joint employer.

With respect to daily supervision, Plaintiffs argue that PPSI documented assignment of PIC employees to specific areas and job tasks.  Plaintiffs have produced an email from PPSI's Andy Herrera which includes a purported instruction to PIC employee Orlando Pagan to "Structor (sic) steel. Laydown yard and FFU unit." (Doc. No. 637, Att. 1, CSOF, ¶ 20).  PIC employee Alfredo Diaz also testified generally that Herrera gave him work instruction, and his testimony implies that he made complaints concerning discrimination to Herrera and Redford.  PIC employee Cyril Thomas testified that he had to clock in by a Hovensa time clock *and* a P2S time clock, and that he relied upon P2S to keep his time.  (Doc. No. 637, Att. 1, CSOF, ¶ 54).  Finally, with respect to pay, Plaintiffs offer evidence that PIC employee Alfredo Diaz, when seeking a pay raise, had to seek approval from Redford and Herrera.  (Doc. No. 637, Att. 1, CSOF, ¶ 48).

The Fluor Defendants contend that, contrary to Plaintiffs' contentions, Plaintiffs have failed to demonstrate that the Fluor Defendants in general, and PPSI in particular, exercised control over the time, manner, or method of Plaintiffs' work, or had any involvement in (1) Plaintiffs' hire; (2) the administration of disciplinary procedures; (3) the maintenance of

Plaintiff's employment records; (4) the supervision of Plaintiffs during their employment at the Hovensa refinery; or (5) any collective bargaining process applicable to Plaintiffs.

Specifically, the Fluor Defendants argue that the Herrera email produced by Plaintiffs to demonstrate that PPSI gave instructions to Orlando Pagan is clearly a project summary written at a later date; it does not, contend the Fluor Defendants, indicate supervision over PIC employees. With respect to Diaz' testimony as to who received his complaints and gave him instruction, the Fluor Defendants argue that even accepting Diaz' testimony as true, such limited supervision does not support the finding of a joint employer relationship.

Finally, with respect to Plaintiffs' termination, the Fluor Defendants argue that, even if Plaintiffs' version of the October meeting between PPSI and PIC management were true and Clay Redford directed Plaintiffs' termination – a fact which the Fluor Defendants dispute – nothing about the process of meeting with PIC and informing them that part of the workforce would need to be laid off is indicative of a joint employer relationship; rather, it is consistent with the scope of the contract between PIC and PPSI.  Indeed, PIC, according to the Fluor Defendants, still retained the sole ability to terminate Plaintiffs from its employ; it could have transferred Plaintiffs elsewhere to other projects.  Thus, PIC alone, according to the Fluor Defendants, was the party responsible for Plaintiffs' termination.  (Doc. No. 617, SUMF, ¶¶ 24, 28-36).[6]

Upon review of the evidence presented, the Court first concludes that Plaintiffs' evidence does not demonstrate the type of explicit or implicit supervision and control between the Fluor

---

[6] Two Plaintiffs that are party to this litigation were terminated prior to the October and December layoffs: Bienvenido Carrasco and Lucho Hernandez.  However, Plaintiffs contend that both Carrasco and Hernandez were terminated at the direction of PPSI for discriminatory reasons.  Thus, although the factual circumstances differ, the analysis for the Court's purposes in this instance is the same.

Defendants and Plaintiffs that would warrant a finding of employer status under the traditional principles of common law agency.

The Court *does* believe, however, that Plaintiffs have raised a genuine issue of material fact with respect to whether PPSI was a joint employer as concerns Plaintiffs.  As discussed previously, in *Mendez v. Hovensa, LLC*, the court found the plaintiff's evidence that the defendant had directed plaintiff's employer to fire him sufficient to raise a genuine issue of material fact as to whether the defendant was, in fact, a joint employer.  9 V.I. at 834-36.  Here, Plaintiffs have likewise proffered evidence indicating that PPSI directed their termination via, *inter alia*, the October 25 meeting, and the Court further notes that the language of the sub-contract itself, in which PPSI reserved the right to require PIC to remove and/or replace personnel on the project, supports the conclusion that PPSI had more than indirect control over Plaintiffs' employment.  (Doc. No. 617, Att. 11, Ex. K PPSI-PIC Subcontract, 22.1).[7]

With respect to the Fluor Defendants' argument that PPSI's power of removal extended only to Plaintiff's presence on the project, and not to Plaintiff's actual termination, the Court finds such a distinction, in this instance, to be illusory.  While it is true that PIC could have theoretically moved Plaintiffs to other projects – and indeed, one plaintiff was hired back within

_____

[7] The Court notes that the contractual provision permitting PPSI to remove and/or replace PIC personnel on the project also reserves the right for Defendant Hovensa to remove and/or replace PIC personnel.  (Doc. No. 617, Att. 11, Ex. K PPSI-PIC Subcontract, 22.1).  In an Opinion issued this same day, however, the Court has reached a judgment that Hovensa was not, in fact, a joint employer with PIC, in spite of this contractual language.  (Doc. No. __ ).  To explain this difference in outcome, the Court notes that, unlike with PPSI, there are no contentions on the part of Plaintiffs that Hovensa was involved in the actual decision to terminate Plaintiffs.  Moreover, the contractual language reserving PPSI and Hovensa's right to remove personnel is couched within the same provision stating that PIC is an independent contractor, weakening its potential power to establish a joint employer relationship on its own.  (Doc. No. 617, Att. 11, Ex. K PPSI-PIC Subcontract, 22.1).  The contractual language in this instance, without more, is simply insufficient to support a finding that Hovensa was Plaintiffs' joint employer.  On the other hand, Plaintiffs here offer evidence that PPSI had both potential and actual authority over Plaintiffs' access to employment.

weeks of his layoff to another position at the refinery – practically speaking, the end result in such circumstances must often be actual termination.  With this in mind, and following the lead of the District Court in *Mendez*, the Court will permit the question of whether or not PPSI was Plaintiffs' joint employer to go to the jury.  The Fluor Defendants' Motion for Summary Judgment based on Lack of Joint Employer Status is, therefore, denied with respect to PPSI.

However, as concerns the remaining Fluor Defendants – P2S, FEI, and Fluor – the Court finds Plaintiffs' evidence insufficient to impose liability under the same theory of joint employer status.  Beginning with P2S, although there is some scattered testimony involving P2S time clocks and P2S supervisors, Plaintiffs' showing does not constitute more than a "scintilla" of evidence that P2S was Plaintiffs' joint employer.  Moreover, it is undisputed that workers on the jobsite frequently confused the abbreviation for PPSI and P2S, and, in many instances, utilized "P2S" to reference both entities.  In other words, the fact that Plaintiffs may have had to keep time on a "P2S" time clock or interacted with an unnamed "P2S" supervisor does not necessarily implicate P2S as named in this Opinion, but most likely implicates PPSI.

The Court finds Plaintiffs' evidence with respect to Fluor equally unconvincing.  Plaintiffs assert at various points in the record that there were "Fluor" hardhats spotted onsite, that Fluor Corporation was the third party beneficiary to an arbitration award in favor of PPSI, and that Fluor Corporation has shared legal counsel with its subsidiaries at various points in complaints to the EEOC and in this litigation.  However, these facts are not *material* to the question of Fluor's joint employer status, as they do not reach the issue of control over Plaintiffs' day-to-day activities.  Even Plaintiffs, in arguing that P2S, Fluor, and FEI were joint employers, reveal the weakness of their position via the phrasing of their argument.  (*See, e.g.*, Doc. No. 655 (contending that P2S, FEI, and Fluor were all joint employers, but "particularly FEI and PPSI")).

Finally, aside from its possible status as a single employer with PPSI, the Court does not

find that Plaintiffs have provided sufficient evidence to impute liability to FEI as a joint

employer.  Thus, the Court declines to send the issue of joint employer status as to FEI, P2S, and

Fluor to the jury.

*Grants the motion on* [handwritten]

ii.     Liability under the *Nesbit* Single Employer Inquiry

Because the Court has found sufficient evidence to support the finding that PPSI was

Plaintiffs' joint employer, Fluor, FEI, and P2S may nevertheless be liable for the conduct

complained of in the Second Amended Complaint on the theory that they formed a single

employer with PPSI.

As discussed previously, Fluor Corporation, a holding company, is the parent corporation

of FEI.  FEI, in turn, is the parent corporation of sister companies PPSI and P2S.  As a general

rule, a parent corporation will not be held liable for the activities of its subsidiary.  *See In re Tutu

Wells Contamination Lit.*, 846 F. Supp. 1243, 1262 (D.N.J. 1993).  However, exceptions are

made where the activities and structure of two or more corporations are sufficiently interrelated

so as to warrant overcoming the inherent presumption of separation.  *See, e.g.*, *Johnson &

Johnson Pharma. Res. and Dev., LLC*, Civ. No. 05-819, 2008 WL 544668, at *7 (D.N.J. Feb. 26,

2008).

Here, Plaintiffs and the Fluor Defendants offer various approaches for determining

whether such an exception should apply.  In this analysis, the Court follows the single employer

test as laid out in *Nesbit v. Gears Unlimited, Inc.*, 347 F.3d 72 (3d Cir. 2003).  The single

employer inquiry is a variation on the frequently utilized integrated enterprise test, tailored for

inquiries under Title VII.  *Id.*; *see also Vitalis v. Sun Constructors, Inc., et al.*, 481 Fed. App'x

718, 728 (3d Cir. 2012); *Blakeman v. Freedom Rides, Inc.*, CV 12-416-LPS-CJB, 2013 WL 3503165 (D. Del. July 10, 2013).

Under *Nesbit*, a company and its affiliates will be considered a single employer "(1) when a company has split itself into entities with less than fifteen employees intending to evade Title VII's reach or (2) when a parent company has directed the subsidiary's discriminatory act of which the plaintiff is complaining." *Nesbit*, 347 F.3d at 85. In the absence of these two factors, entities may yet be found to constitute a single employer where the evidence indicates that the two "entities' affairs are so interconnected that they collectively caused the alleged discriminatory employment practice." *Id.* at 86. In analyzing purported interconnectedness, the *Nesbit* court modified the integrated enterprise test to consider the following factors:

> (1) the degree of unity between the entities with respect to ownership, management (both directors and officers), and business functions (e.g., hiring and personnel matters), (2) whether they present themselves as a single company such that third parties dealt with them as one unit, (3) whether a parent company covers the salaries, expenses, or losses of its subsidiary, and (4) whether one entity does business exclusively with the other.

*Vitalis v. Sun Constructors, Inc., et al.*, 481 Fed. App'x 718, 728 (3d Cir. 2012) (quoting *Nesbit*, 347 F.3d at 85-88). The *Nesbit* court reiterated that mere "common ownership and *de minimis* coordination in hiring are insufficient bases to disregard the separate corporate forms." *Nesbit*, 347 F.3d at 89.

Upon review of the evidence, the Court finds that, even drawing all inferences in favor of Plaintiffs, Plaintiffs have not raised a genuine issue of material fact with respect to whether or not Fluor, FEI, or P2S constituted a single employer with PPSI. With respect to Fluor, there is little to no evidence of an overlap in management, business functions, or support of PPSI via coverage of salaries, expenses, or losses. The evidence in the record supporting the outward appearance of integration via shared corporate email addresses, Fluor hardhats, and occasional

overlaps of legal representation is simply insufficient to circumvent the official corporate structure.

With respect to Plaintiffs' evidence as to FEI, the Court notes first that "parent corporations are allowed to participate in subsidiaries' affairs." *Kardis v. A.C. Nielson Co.*, 1998 WL 119543, at *7 (D.N.J. Mar. 13, 1998). Indeed, "hir[ing] the high-level executive officers of its subsidiaries says nothing about whether [a parent] is involved in the day to day employment decisions of [its subsidiary]." *Saalim v. Dycom Indus. Inc.*, Civ. No. 07-2822, 2008 WL 2966312, at *7 (D.N.J. Jul. 31, 2008). Moreover, sharing certain services or benefits programs does not automatically trigger single employer status, especially where such practices involve capitalizing on economics of scale. *See Engelhardt v. S.P. Richards Co., Inc.*, 472 F.3d 1, 8 (1st Cir. 2006) (finding no integrated employer status where sharing of employee benefits programs and payroll services merely capitalized on economies of scale); *see also Vitalis*, 481 Fed. App'x at 728 (rejecting payment for parent corporation's services as sufficient support for finding of single employer liability). Certainly, requiring subsidiaries to "adopt harassment and electronic communications policies does not demonstrate the type of excessive control necessary to show control of labor relations." *Dycom*, 2008 WL 2966312 at *8. Finally, "[s]eparate headquarters, human resource department, records and record keeping, and separate worksites . . . fulfill[ing] wholly distinct functions" reinforce the presumption of corporate separation. *See Engelhardt*, 472 F.3d at 8.

Here, the Court does not find that Plaintiffs' evidence concerning FEI's involvement in the initial set-up and hiring for PPSI surpasses normal levels of involvement with a subsidiary's affairs. Nor does the Court find FEI's provision of services, labor, and management via a service agreement with PPSI to be convincingly indicative of single employer status. There also appears

to be sufficient distinction in corporate management and activity, as FEI had no headquarters or offices on St. Croix, and PPSI had a separate human resources department lead by Juan Morales, Jr. The fact that FEI's secunded employees who formed PPSI's management team (Redford, Herrera, Morales, and Mitchell) remained on FEI's payroll is insufficient to overcome the presumption of corporate separation.

Plaintiffs' evidence falls similarly short with respect to P2S. Although Plaintiffs proffer evidence that P2S (1) was involved in the initial hiring of certain PPSI employees; (2) purportedly assisted in certain human resource functions for PPSI; and (3) provided substance abuse policies and safety information to new hires, these are all activities within the normal scope of relations between separate but related corporations. Operations appear to be sufficiently separate, as P2S was headquartered on the mainland and engaged in contracts with other entities aside from PPSI. The fact that various witnesses confused the names of P2S and PPSI, and that Morales consulted with P2S on HR matters, simply does not constitute more than a "scintilla" of evidence that these sister companies were, in fact, a single employer.

Because the Court does not believe that Plaintiffs have presented evidence sufficient to overcome the presumption of corporate separation and to raise a genuine issue of material fact with respect to the single employer status of the Fluor Defendants, and because the Fluor Defendants appear to be otherwise uninvolved with the events underlying the present lawsuit, the Court grants the Fluor Defendants' motion for summary judgment with respect Fluor Corp, P2S, and FEI as to all counts.

CONCLUSION

For the foregoing reasons, the Court will grant the Fluor Defendants' Motion for Summary Judgment for Lack of Joint Employer Status, (Doc. Nos. 615, 616, 617), with respect

to P2S, FEI, and Fluor.  The Court will, however, deny the motion with respect to Plant

Performance Services International, Ltd.  An appropriate Order accompanies this Opinion.




ANNE E. THOMPSON, U.S.D.J.

Date:  10 / 4 / 13